UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **KAREN CAHALL** | : | Case No. 1:24-cv-00688 |
| Plaintiff, | : | JUDGE DOUGLAS COLE |
| v. | : | |
| **NEW RICHMOND EXEMPTED VILLAGE SCHOOL DISTRICT BOARD OF EDUCATION, et al.** | : : | |
| Defendants. | : | |

**DEFENDANTS' REPLY IN SUPPORT OF JUDGMENT ON THE PLEADINGS (Doc. 12) AND MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS (Doc. 16)**

On November 6, 2024, Plaintiff's teaching contract was suspended for three days after she incorporated controversial reading materials into her third-grade math and science classroom without first complying with district policy.  (Doc. 1, Complaint, Ex. 2, PageID 29-30)  Less than a month later, Plaintiff sued the Board of Education, the superintendent, and the individual board members alleging various claims federal and state claims.  (*Id*.)

Defendants filed a motion for judgment on the pleadings on February 20, 2025, because Plaintiff's claims are insufficient as a matter of law.  (Doc. 12, MJP)  On March 20, 2025, Plaintiff responded in opposition to Defendants' motion in which she included her own cross-motion for partial judgment on the pleadings.  (Doc. 16)  Subsequently, Plaintiff also filed a motion to amend her complaint, which will be addressed separately by Defendants within the timeframe set by the Local Rules.  (Doc. 17)

**A. The Employment Rule At-Issue in this case is Not Void for Vagueness.**

Plaintiff uses a very large portion of her brief in opposition and motion for partial summary judgment to present case law and argument to this Court describing how the constitutional void-for-vagueness doctrine applies to statutes and ordinances. (Doc. 16, p. 5-14) Yet, there is no dispute that Board Policy No. 2240 is **not** a statute or ordinance. The school policy in this case does **not** impose criminal or civil penalties. The school policy in this case does **not** apply to place restrictions on members of the general public, upon parents, or even upon students. Rather, the policy at-issue in this case is an ordinary employment rule that applies **only** to professional educators – teachers who are specifically trained in knowing and understanding what educational materials are appropriate for the students they teach. As such, the case law relied upon so heavily by Plaintiff in the context of statutes, ordinances, or even governmental policies that apply to general members of the public is of little significance to this Court in deciding the current case.

When evaluating the employment rule in this case, the Court should consider whether an ordinary teacher exercising her training and common sense would have had at least fair notice of what was required by the particular Board policy. Federal law does not require such rules to be defined with great specificity, and even very broad rules have been affirmed by the courts. Plaintiff has pleaded no facts in her complaint to suggest that teachers licensed in the State of Ohio would not understand what classroom materials might be considered "controversial" under the terms of the New Richmond's policy. Plaintiff has pleaded no facts in her complaint to suggest that teachers in New Richmond did not understand what classroom materials would be considered "controversial" under the terms of the policy. Plaintiff pleads no facts in her

2

complaint to suggest that **she** did not understand what classroom materials would be considered "controversial" under the language of the policy.

Indeed, Plaintiff specifically pleads facts in her complaint that demonstrate that she had actual knowledge that gender ideology and sexuality were subject matters considered to be "controversial" in the elementary school building in which she was employed. The books she incorporated into her classroom library and made available for students to read, by admission, involved those potentially controversial themes. There was no ambiguity as it pertains to how the policy was applied in this case. Plaintiff knew what she was doing and cannot claim ignorance of what Board policy required after-the-fact.

When this Court reviews cases that apply the void-for-vagueness doctrine in the context of limited employment rules, such as the rule at-issue in this case, it must necessarily find in favor of the defendants. For instance, in *Keating v. Univ. of S. Dakota*, 569 F.App'x 469 (8th Cir. 2014), a college professor received discipline for his behavior towards a colleague. He filed a federal lawsuit arguing that the university's policy that required faculty members to conduct themselves in a "civilly, constructively and in an informed manner" was too vague to provide him with fair notice of the conduct prohibited. The court explained, however, that where "an enactment does not impose criminal penalties, due process tolerates a lesser degree of specificity than it would from a criminal statute." *Id*. at 471, citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc*., 455 U.S. 489, 498-99, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982).

In *Hoffman Estates*, the Supreme Court held that a governmental enactment is facially void for vagueness **only** if it "is impermissibly vague in **all** of its applications." *Hoffman Estates*, 455 U.S. 498 (emphasis added). "The degree of vagueness that the Constitution tolerates — as well as the relative importance of fair notice and fair enforcement — depends in

3

part on the nature of the enactment." *Id*. Like the Court in this case, the court in *Keating* was challenged with reviewing an ordinary employment rule applicable to a specific category of employees – college professors. Following the rule in *Hoffman Estates*, the Eighth Circuit concluded that, while the university's civility clause for faculty members may have been "imprecise," there were "many instances of faculty misconduct would fall clearly within the clause's proscriptions." For that reason, the court could not find the policy to be "facially unconstitutional."

In this case, Plaintiff pleaded that she was personally aware that gender ideology and sexual orientation were considered "controversial" subjects in her school district. Yet, despite that knowledge, she incorporated books with those themes into her elementary classroom without first obtaining the approval required of Board policy. Because her conduct would clearly fall within the policy requirements, this Court cannot find that the policy is facially unconstitutional as a matter of law. Moreover, because there "many instances of faculty misconduct would fall clearly within the clause's proscriptions," the Court cannot find Board Policy 2240 void for vagueness.

In *Poulard v. Trustees of Indiana Univ.*, N.D.Ind. No. 2:16 CV 115, 2018 U.S. Dist. LEXIS 167617 (Sep. 28, 2018), the plaintiff was also disciplined by his public university employer. He filed a federal lawsuit arguing that the sexual misconduct policy under which he was disciplined failed to provide a clear definition of what constituted "harassment." The Court disagreed, explaining that a government policy as to the expected conduct of employees "need not define every term to survive a vagueness challenge." Rather, the question in the public employment context is whether, when applying ordinary common sense, a reasonable employee could understand from those employment rules that certain conduct would put them at risk of

4

discipline. See, also, *Corlett v. Tong*, S.D.Cal. No. 24-CV-78 TWR (MPP), 2024 U.S. Dist. LEXIS 170469 (Sep. 20, 2024).

For the rules applied in the foregoing cases, this Court can go back as far as *Arnett v. Kennedy*, 416 U.S. 134, 40 L. Ed. 2d 15, 94 S. Ct. 1633 (1974). In *Arnett*, the Supreme Court decided that civil service employees could be discharged to "promote the efficiency of the service," because that language was not unduly vague in the employment context. *Id*., overturned in part on other grounds by *Cleveland Bd. of Edn. v. Loudermill*, 470 U.S. 532, 540, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The Supreme Court's decision in *Arnett* has long been cited for the rule that "generalized language may appropriately be used to set out standards of conduct for employees." *Piscottano v. Murphy*, 511 F.3d 247, 281 (2d Cir.2007).

The Supreme Court has emphasized that governmental entities must be given broader discretion and deference by the courts in cases where the challenged restrictions have been placed on the conduct or speech of **its own employees** versus when those restrictions are placed on the public in general. See, e.g., *Waters v. Churchill*, 511 U.S. 661, 673, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994).

> Government employee speech must be treated differently with regard to procedural requirements as well. For example, speech restrictions must generally precisely define the speech they target. (citations omitted) Yet surely a public employer may, consistently with the First Amendment, prohibit its employees from being "rude to customers," a standard almost certainly too vague when applied to the public at large.

*Id*. at 673. In looking at the basic rules that apply in the employment context, Plaintiff's notion that the Board's use of the word "controversial" is somehow too vague seems particularly misplaced. Certainly, if the Supreme Court has said the word "rude" is clear enough to place a government employee on notice of the expected conduct, New Richmond's use of the word "controversial" in Board Policy 2240 cannot be considered unconstitutionally vague as an

employment rule.

The Supreme Court also has spoken on the question of how clearly a **school district** rule must be defined from a procedural due process perspective. See, e.g., *Bethel School Dist. v. Fraser*, 478 U.S. 675, 686, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986). In *Fraser*, a student was disciplined when he publicly referred to another student in terms of an elaborate, graphic, and explicit sexual metaphor. The Supreme Court concluded that the school disciplinary rule prohibiting "obscene" language was not unconstitutionally vague. "Given the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions." *Id*.

*Fraser* was in the context of a school district rule that limited the conduct of children and which subject those children to a potential loss of educational rights. This case arises in the context of a school district rule that prescribes the conduct of trained professionals. Certainly, school districts should be able to reasonably expect that their trained and licensed teachers can have an ordinary understanding of which "controversial" materials should be reviewed and approved before the teachers may provide those materials to elementary-aged students.

Ohio law provides very broad authority for school districts to discipline and even discharge teachers "for good and just cause." O.R.C. § 3319.16. Most people would reasonably agree that these words are much more ambiguous than the terms of New Richmond's controversial materials policy. Yet, no Ohio or federal court has found that language to be void for vagueness. Here, Plaintiff alleges she received a three-day suspension for incorporating "controversial" materials involving gender identity and sexuality into her third-grade math and science classroom library without prior approval. The Court must consider the level of

specificity that is required of a school board policy in such circumstances, as defined by existing case law, and conclude that the Board policy meets constitutional muster.

In *Wishart v. McDonald*, a tenured sixth grade public school teacher was discharged when he carried, dressed, undressed and caressed a mannequin in public view on his property located in the town in which he taught. *Wishart v. McDonald*, 500 F.2d 1110 (1st Cir. 1974). The school's dismissal regulation provided a tenured teacher could be dismissed only for "conduct unbecoming a teacher . . . or other good cause." *Id.* at 1111. The court, applying *Arnett*, held the regulation was not void for vagueness as applied to Wishart because his behavior was fairly identifiable by an ordinary person as conduct unbecoming a teacher. Therefore, the regulations gave him notice that his conduct put him at risk of dismissal. *Id.* at 1116. The court stated: "The choice between specific rules and general standards is a difficult one; each has its unique costs. The real safeguard under a general standard is the common-law adjudicatory process and judicial review." *Id.* at 1117 (citation omitted).

The Sixth Circuit agreed with the *Wishart* decision in *Fowler v. Bd. of Edn.*, 819 F.2d 657, 664 (6th Cir.1987). In *Fowler*, the court reviewed a Kentucky statute that permitted teacher discipline for "conduct unbecoming a teacher." The Court concluded this language was not unconstitutionally vague. See also, *Kutchinski v. Freeland Community School Dist.*, 69 F.4th 350, 360 (6th Cir. 2023)(Michigan school district policy prohibiting "gross behavior" not unconstitutionally vague); *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1135 (3d Cir. 1992)("standards of sound scholarship and competent teaching" was not unconstitutionally vague); and *Garrett v. Matthews*, 474 F. Supp. 594 (N.D. Ala. 1979)("adequate cause" was not unconstitutionally vague). Plaintiff has not plausibly alleged that the employment rule at-issue in

7

this case failed to place her on fair notice of the conduct required of her, and her facial challenge to the policy must fail as a matter of law.

Moreover, Plaintiff has no plausible vagueness claim in this case, because she admitted in her complaint that she knew that gender ideology and sexual orientation were considered controversial subject matters in the district. The Sixth Circuit has rejected vagueness challenges "when [a party's] conduct clearly falls within a statutory or regulatory prohibition." *Fowler*, *supra*, 819 F.2d at 665; see also, *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20, 130 S.Ct. 2705, 177 L.Ed.2d 355 (2010) ("[A] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.") (citation omitted). Based upon the allegations in her own complaint, Plaintiff knew or should have known that she was required to have the books approved under Board policy. She refused to do so and, instead, surreptitiously incorporated the books into her classroom library.

In support of her position in this case, Plaintiff relies heavily upon "three cases out of Tennessee, New Hampshire and Oklahoma," because those cases also involve statutory restrictions on "divisive issues" in public classrooms. (Doc. 16, PageID# 93-98), citing *Tennessee Educational Association v. Reynolds*, 732 F.Supp.3d 783 (M.D. Tenn. 2024); *Local 8027, AFL-CIO v. Edelblut*, 651 F.Supp. 3d 444 (D. N.H. 2023); and *Black Emergency Response Team v. Drummond*, 737 F.Supp.3d 1136 (W.D. OK 2024). There are several problems with Plaintiff's reliance on these decisions. First, these three cases have not been fully resolved and are still working their way through the courts. None of the decisions are binding on this court. Only the Tennessee case is in the Sixth Circuit, and the breadth of the district court's opinion suggests there remains much to be resolved.

8

Moreover, these cases are not persuasive authority given that all three cases involve broad, state-wide challenges to controversial **state statutes** that restrict the daily curricular speech of **all** teachers, administrators, and even school districts across all communities. None of the cases involve the application of a general employment rule by a single government employer to a specific school district employee, as in the alleged facts of this case. Again, as explained above, the U.S. Supreme Court has dictated that the level of specificity required of local employer/employee rules is significantly less than what is required of broad-based legislation.

For all these reasons, as presented in the Defendants' underlying motion for judgment on the pleadings, the Court must find Board Policy 2240 is not void for vagueness as a matter of law. Defendants' motion should be granted and Plaintiff's cross motion should be denied. Plaintiff's claims challenging the policy facially or as applied must fail as a matter of law.

### B. Plaintiff's Equal Protection and Religious Discrimination Claims Fail as a Matter of Law.

In response to Defendants' motion to dismiss her Equal Protection Clause (EPC) and religious discrimination claims, Plaintiff continues to compare her own actions in providing controversial written materials to students, through use of her classroom library, to a teacher wearing the symbol of a cross around her neck or a teacher communicating with another teacher about a faith-based event. Yet, Plaintiff fails to offer any rational explanation how these employees would plausibly be considered "similarly situated" to her for EPC purposes. Plaintiff does not claim she was disciplined for wearing a symbol of her religion. She does not allege she was prohibited from sending internal emails to staff about a religious event important to her. Rather, Plaintiff seems to suggest in her brief that, if the district allows one teacher to wear a cross, then this gives her the right to express her religious views by providing books and materials to students supportive of her religious beliefs. In other words, if Suzie Teacher wears a

9

cross, Plaintiff has the right to hand out bibles to kids. The law clearly does not support such a suggestion.

Plaintiff's arguments attempt to expand her own First Amendment rights into a right to incorporate her religious beliefs into the curriculum of the school. However, the courts have long held that teachers do not have a "First Amendment right to influence curriculum as they so choose." *Downs v. Los Angeles Unified School Dist.*, 228 F.3d 1003, 1015-16 (9th Cir. 2000) (citing cases). The curriculum taught in public schools is government speech; meaning "First Amendment rights have been limited." *Id*. at 1009 (discussing H*azelwood School Dist. v. Kuhlmeier*, 484 U.S. 260, 270-73, 108 S. Ct. 562, 98 L. Ed. 2d 592 (1998) and *Planned Parenthood v. Clark County School Dist*., 941 F.2d 817 (9th Cir. 1991)). Books and written materials provided to students are part and parcel of that curriculum. As a matter of law, New Richmond is solely in control of the curricular materials to be provided to elementary students, not Plaintiff. *Evans-Marshall v. Bd. of Edn. of the Tipp City Exempted Village School Dist*., 624 F.3d 332, 335 (6th Cir.2010). This is true regardless of Plaintiff's personal religious beliefs.

The fact that this case involves curricular speech is clearly what distinguishes Plaintiff from her purported comparators. Wearing a cross pendant or talking with colleagues about religious matters does not implicate the school district in a violation of the Establishment Clause of the First Amendment. Indeed, if Plaintiff wanted to have a religious book in her classroom solely for her own use, it would not implicate the Establishment Clause. See *Freshwater v. Mt. Vernon City School Dist. Bd. of Edn*., 137 Ohio St.3d 469, 2013-Ohio-5000, 1 N.E.3d 335, 354. However, a teacher's act of incorporating religious books into her classroom library **for the use of students** clearly would. Indeed, the Ohio Supreme Court has made a clear distinction between a teacher who provides students with religious materials in violation of the

10

Establishment Clause versus a teacher who wears a religious item or even has a religious book in the classroom solely for his own use. *Id.* Under the established legal precedent, the former may be regulated by school districts while the latter may not.

State and federal law clearly distinguish Plaintiff's alleged conduct (providing books to students) from the conduct she alleges the district did not discipline (wearing religious symbols and staff-to-staff communications). As such, Plaintiff has failed to plead a plausible comparator necessary to establish an essential element of any EPC or religious discrimination violation. These claims must be dismissed as a matter of law.

### C. Superintendent Miller is Entitled to Qualified Immunity.

Plaintiff argues that Superintendent Miller would not be entitled to qualified immunity, based upon the general rules surrounding the constitutional claims she alleges in this case. Yet, Plaintiff has not pointed to a single case in which a local employment rule was found to be void for vagueness on the grounds she suggests. She certainly has not pointed to a single case in the Sixth Circuit that would have placed Superintendent Miller on notice that his conduct in enforcing Board policy was clearly in violation of the law. She has not pointed to a single case in which the Court has held that the EPC or First Amendment allows a teacher to provide religious materials to students.

To overcome qualified immunity, Plaintiff must have alleged facts showing: (1) the superintendent personally violated one of her constitutional rights; and (2) that constitutional right was clearly established. *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011) (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 816, 172 L. Ed. 2d 565 (2009)). As Defendants have explained, Plaintiff cannot plausibly demonstrate the Superintendent's mere enforcement of an existing Board policy was somehow in violation of one of her constitutional

11

rights. Moreover, to show that a constitutional right is clearly established for purposes of overcoming qualified immunity, a plaintiff must show that "existing precedent has 'placed the . . . constitutional question beyond debate.'" *Schulkers v. Kammer*, 955 F.3d 520, 532 (6th Cir. 2020) (quoting *White v. Pauly*, 580 U.S. 73, 137 S. Ct. 548, 551, 196 L. Ed. 2d 463 (2017)). If nothing else is clear from the competing briefs in this case, it is that the Court cannot possibly find that the existing precedent surrounding the application of the void-for-vagueness doctrine, the EPC, or the First Amendment to the facts of this case has been decided "beyond debate."

Accordingly, the Court must grant qualified immunity to Superintendent Miller and dismiss him from this case.

### D. Conclusion

Plaintiff acknowledges in her brief that, if her constitutional claims fail, so too does her state law claims. (Doc. 16, PageID# 118) She also does not present any significant argument that the official capacity claims against the individual Board members should survive dismissal. (*Id.* at PageID# 119) For all the reasons set forth herein and in Defendants' motion for judgment on the pleadings, Plaintiff's lawsuit should be dismissed in its entirety and with prejudice. All defendants in this case should be granted judgment in their favor as a matter of law.

Respectfully submitted:

/s/ Tabitha Justice
Brian L. Wildermuth (0066303), Trial Counsel
bwildermuth@swjohiolaw.com
Tabitha Justice (0075440), Trial Co-Counsel
tjustice@swohiolaw.com
SUBASHI, WILDERMUTH & JUSTICE
The Greene Town Center
50 Chestnut Street, Suite 230
Dayton, OH 45440
(937) 427-8800
(937) 427-8816 (fax)
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2025, I electronically filed the foregoing with the Clerk of the Court using the Court's authorized electronic filing system, which will send notification of such filing to the following:

Mark P. Herron (0051998)
herronlaw@msn.com
5001 Mayfield Road, Suite 212
Lyndhurst, Ohio 44124
*Attorney for Plaintiff*

/s/ Tabitha Justice
Tabitha Justice (0075440)