IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| KAREN CAHALL ) | CASE NO. 1:24-CV-688 |
| ) | |
| Plaintiff, ) | JUDGE DOUGLAS R. COLE |
| ) | |
| v. ) | |
| ) | |
| NEW RICHMOND EXEMPTED ) | |
| VILLAGE SCHOOL DISTRICT ) | |
| BOARD OF EDUCATION, et al., ) | |
| ) | |
| Defendants ) | |

**REPLY BRIEF IN SUPPORT OF CROSS-MOTION FOR
PARTIAL JUDGMENT ON THE PLEADINGS (ECF No. 16)**

The question of law that is before this Court is straightforward: does New Richmond's "controversial issues" policy – Board Policy 2240 – meet well-established due process requirements that require courts to strike down laws that "fail[] to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or "authorize[] or even encourage[] arbitrary and discriminatory enforcement." *United States v. Bolos*, 104 F.4th 562, 575 (6th Cir. 2024) (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)). Accord *Miller v. City of Cincinnati*, 622 F.3rd 524 (6th Cir. 2010); *Columbia Natural Resources v. Tatum*, 58 F.3rd 1101 (6th Cir. 1995); *Dumbrot v. Central Michigan University*, 55 F.3rd 1177 (6th Cir. 1995); *Tennessee Educational Association v. Reynolds*, 732 F.Supp.3rd 783, 806 (M.D. Tenn. 2024).

In just the past two years, ***three*** federal district courts have applied these well-established principles to strike down similar education policies aimed at prohibiting the inclusion of so-called

1

"divisive" or "controversial" issues in public school curriculum – not because of **_what_** the policies sought to prohibit but because of **_how_** they did so. Each of these cases struck down the policies at issue in well-reasoned reported opinions because the language used in the challenged policies simply was too vague to place a reasonable person on notice as to exactly what was or was not permitted under those enactments. It is plaintiff's position in this case that while New Richmond has the right to determine what is or is not to be made a part of its curriculum, it must do so that in a manner that complies with these due process requirements and that limiting or prohibiting something because it is "controversial" simply does not meet those requirements.

Defendants continue to largely ignore this central issue and make no real effort to show **_how_** simply prohibiting something on the basis that it is "controversial" is sufficiently "clearly defined" so to place a reasonable person on notice as to what actually is permissible or prohibited. Defendants make no effort to dispute that because two reasonable people can disagree on **_virtually anything_** it becomes virtually impossible for anyone to know what is or is not "controversial" within the meaning of Board Policy 2240. Defendants make no effort to refute the contention that the lack of any meaningful enforcement guidance in Board Policy 2240 can result in impermissible arbitrary, discriminatory and overzealous enforcement. Nor do the defendants make any effort to show that the undefined phrase "instructional program"[1] in Board Policy 2240 comports with due process requirements – particularly since Board Policy 2240's express language not only specifically allows so-called "controversial issues" to be discussed in a classroom setting under delineated circumstances, but it also specifically allows a teacher to express his or her personal opinion on a "controversial issue" in such circumstances. Nor do defendants dispute that by

---

[1] Defendants do not dispute that this term is vague to the extent that there is no clarity as to whether merely maintaining a book in a classroom constitutes an "instructional program." It remains undisputed for the purposes of the pending motion that Ms. Cahall did not teach from the disputed books to her students or otherwise require students to read the books (ECF No. 1, ¶ 10, 60, Page ID Nos. 4-5, 14).

expressly allowing teachers to discuss "controversial issues" with students and state their opinion, a teacher's First Amendment rights **_are_** implicated by Board Policy 2240 and that heightened level of scrutiny is thereby required.

Instead, the defendants do a considerable amount of pivoting and deflecting away from the central issue that is before this Court. First, defendants state – without citation to any binding or persuasive authority – that these well-established due process requirements should not even apply in this case on the specious basis that "Board Policy 2240 is not a statute or ordinance" and "does not impose criminal or civil penalties" (ECF No. 18, Page ID No. 183). This argument is without merit on multiple levels. Defendants' contention that it does not impose any penalties is refuted by the undisputed fact that Ms. Cahall was suspended for three days without pay and threatened with "more severe discipline up to and including termination of your employment" (ECF No. 1, Page ID No. 30).[2] Clearly – if there were to be no penalties for violating Board Policy 2240 then there should have not been an unpaid suspension and threat of further punishment to Ms. Cahall in the first place. Defendants' argument is completely meritless.

The argument that Board Policy 2240 is not a "statute or ordinance" is also wholly without merit. The terms "statute" and "ordinance" have no real "legal" meaning but are terms of art used to describe an enactment by a governmental body within the scope of the authority granted to it. A local "Board of Education" in Ohio is exactly that – a governmental body empowered by Ohio law to enact policy for that school district – including setting curriculum. R.C. 3313.60. Defendants cite no authority – binding or persuasive – holding that a local Board of Education in Ohio is exempted from complying with these well-established due process guarantees simply because it operates on a local level rather than on a state-wide level. Regardless of what label one

---

[2] Defendants do not explain why an unpaid suspension and the threat of more severe discipline do not constitute a "civil penalty."

wants to put on Board Policy 2240, the fact remains that Board Policy 2240 has been enacted by a governmental body within the powers afforded to it by the State of Ohio and its purpose is to control or limit what is presented in the classroom.  In this regard, Board Policy 2240 is fundamentally no different than the three education-content restriction enactments from Tennessee, New Hampshire and Oklahoma that were at issue in the cases cited in Ms. Cahall's brief:  *Black Emergency Response Team v. Drummond*, 737 F.Supp. 3rd 1136 (W.D. Ok. 2024); *Tennessee Educational Association v. Reynolds*, 732 F.Supp. 3rd 783 (M.D. Tenn. 2024); *Local 8027, AFL-CIO v. Edelblut*, Case No. 21-CV-1077 (D. N.H. May 28, 2024) and *Local 8027, AFL-CIO v. Edelblut*, 651 F.Supp.3rd 444, 454 (D. N.H. 2023).  Defendants are not exempt from these well-established rules.

    Defendants also suggest that this Court should not follow the lead of these courts because those cases are ongoing.  This too is not a reason for disregarding the merit holdings of these courts.  *Reynolds* was decided in the context of a motion to dismiss – which is the same procedural posture this case is in (even with the pending cross-motion for judgment on the pleadings).  By seeking dismissal of the case, the defendants in *Reynolds* asked the Tennessee District Court to do exactly what the defendants here have asked this Court to do – determine whether or not the challenged enactments are constitutional.  The same is true with the Oklahoma and New Hampshire legislation at issue in *Drummond* and *Edelblut*.  In *Edelblut*, the District Court applied the same reasoning it used in denying the motion to dismiss to subsequently grant summary judgment to the plaintiffs.  In this context, a motion to dismiss (or a motion for judgment on the pleadings) does not seek to determine whether there is a triable issue regarding the facial constitutionality of a legislative enactment – the motion seeks a direct ruling on the constitutionality of the enactment.  In a facial challenge – either it is constitutional or it is not.

That is the determination that the defendants sought in *Reynolds*, *Edelblut* and *Drummond*, and it is the determination sought in this case.  Defendants here do not allege otherwise.

While the defendants quibble with the impact of the procedural posture of these cases, they do not dispute the correctness of the substantive rulings on the merits in those cases.  At no point do the defendants contend that the District Courts in either *Reynolds*, *Edelblut* or *Drummond* somehow reached the wrong conclusion or misapplied the established body of binding Supreme Court precedent construing the "void for vagueness" doctrine.  This is particularly true with respect to *Reynolds* – which was decided by a District Court within the Sixth Circuit and applied binding Sixth Circuit precedent construing the "void for vagueness" doctrine in addition to binding Supreme Court precedent.  At no point do the defendants claim that the *Reynolds* court misapplied Sixth Circuit precedent in making its decision or that the Sixth Circuit has misapplied Supreme Court precedent.  Furthermore, the defendants do not point to any factual differences between those cases and the facts plead in this case that would compel a different conclusion.  The defendants do not offer a single valid reason why this Court should decline to follow any of these well-reasoned decisions.

Defendants also suggest that substantive due process requirements and the "void for vagueness" doctrine should not apply to Board Policy 2240 because it only applies to "professional educators" and not to "members of the general public, upon parents, or even upon students" (ECF No. 18, Page ID No. 183).[3]  Again – defendants cite to no authority in support of this argument. Defendants also ignore the fact that the similar limitations struck down in *Reynolds*, *Edelblut* and

---

[3] Board Policy 2240 actually does apply to students by expressly allowing them to raise "controversial issues" during a classroom discussion.

5

*Drummond* only applied to school districts and to educators and not the general public.[4] This argument simply lacks merit.

Defendants further argue that Board Policy 2240 should be upheld because it apparently would be impossible for the Board to "define[] with great specificity" what is or is not prohibited by Board Policy 2240. Relying principally on *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982), defendants argue that Board Policy 2240 must be vague in all respects in order to be found facially unconstitutional (ECF No. 18, Page ID No. 184). The same argument was raised and rejected in both *Reynolds* and *Edelblut*. In *Edelblut*, the District Court observed that in recent years, the Supreme Court has decided several cases that have "decisively rejected the notion that clarity in some applications can save a statute from a facial vagueness attack." *Edelblut*, 651 F.Supp. 3rd at 455- 456. See *Johnson v. United States*, 576 U.S. 591 (2015); *Sessions v. Dimaya*, 584 U.S. 148 (2018); *United States v. Davis*, 588 U.S. 445 (2019). The District Court engaged in a thorough analysis as to why these three cases had abrogated the strictness of the "vague in all applications" standard urged by the defendants here. *Reynolds* also rejected a similar argument after a thorough analysis of Supreme Court precedent. *Reynolds*, 732 F.Supp.3rd at 810-813. Defendants here have not alleged that the analysis applied by the District Courts in *Reynolds* and *Edelblut* was legally incorrect.

Defendants' reliance on the "void in all applications" standard also misses one key point – that standard has **_never_** been employed where First Amendment rights are potentially implicated. *Edelblut*, 651 F.Supp.3rd at 459 (citing cases). Defendants do not and have never disputed that

---

[4] In *Reynolds*, the District Court noted that the Tennessee statutes at issue applied to "local educational associations" (referred to as LEAs – apparently akin to a school board or school district) and to "teachers or other employees of the LEA ***." 732 F.Supp.3rd at 793-794. Likewise, in *Edelblut*, the District Court noted that the sanctions provisions of the New Hampshire statutes at issue applied to "educators." 651 F.Supp.3rd at 447-448. Even with that limitation, the District Courts in those cases applied the "void for vagueness" analysis. This case is no different.

6

Board Policy 2240 abuts on protected First Amendment rights by acknowledging that "the consideration of controversial issues has a legitimate place in the instructional program of the schools," expressly allowing discussion of "controversial issues related to the program [to] be initiated by the students themselves" and expressly providing that "in the discussion of any issue, a teacher may express a personal opinion" (ECF No. 1, Page ID No. 27). Even if this Court disagrees with *Edelblut* or *Reynolds* on the continued viability of the *Hoffman Estates* "void in all applications" interpretation espoused by the defendants, it simply cannot be disputed that the standard still would not apply in this case because of the First Amendment implications raised by the specific language of Board Policy 2240 permitting teachers to express personal opinions on controversial issues.

Which brings us back to the language of Board Policy 2240. For all of their rhetoric, defendants cannot escape the fact that the language used to define the scope of the policy – and specifically the term "controversial issue" – fails both prongs of the well-established vagueness test. The policy's definition of "controversial issue" is so vague and so undefinable that "men of common intelligence must necessarily guess at its meaning and differ as to its application ***." *Connally v. General Construction Co.*, 169 U.S. 385, 391 (1925); *Columbia Natural Resources v. Tatum*, 58 F.3rd 1101, 1105 (6th Cir. 1995). The Sixth Circuit has long held that the use of the term "controversial" to define what is or is not permissible practically invites a void for vagueness determination. *United Food & Commercial Workers Union, Local 1009*, 163 F.3rd at 359; *Reynolds*, 732 F.Supp. 3rd at 809. The term "controversial" is "built around unrestrained appeals to abstract principles with contestable moral and political content." *Reynolds*, 732 F. Supp.3rd at 807. It is a term that is so highly "susceptible of multiple and wide-ranging meanings," *United*

7

*States v. Williams*, 553 U.S. 285, 294 (2008) (discussing the word "promote") that it simply cannot be narrowed by its context in Board Policy 2240.

This is amplified by the complete lack of any enforcement guidance in Board Policy 2240. The lack of any enforcement guidance in Board Policy 2240 unquestionably provides whoever is tasked with enforcing it with "an unrestricted delegation of power, which in practice leaves the definition of its terms to law enforcement officers[5], and thereby invites arbitrary, discriminatory and overzealous enforcement." *Dambrot*, 55 F.3rd at 1183-1184. In the context of Board Policy 2240's definition of a "controversial issue" as "a topic on which opposing points of view have been promulgated by responsible opinion or likely to arouse both support and opposition in the community," that determination can simply come down to whether the individual tasked with enforcing Board Policy 2240 – be it a superintendent, principal, or other administrator – agrees or disagrees with a particular point of view. This unrestrained subjectivity is precisely what the law does ***not*** allow. Defendants provide no argument to the contrary.

Defendants' argument that Board Policy 2240 should be upheld because it does not provide for any penalty (ECF No. 18, Page ID No. 183) actually supports Ms. Cahall's arguments that the policy is unconstitutional. Discipline was administered in this case by defendant Miller – that cannot be disputed. The absence of any guidance for what the penalty can be for violating Board Policy 2240 raises an inference that not only do those charged with enforcing Board Policy 2240 have an unrestricted delegation of power to determine whether to enforce Board Policy 2240, they also have an unrestricted delegation of power to determine the severity of the sanction. Again – this unrestrained subjectivity is precisely what the law does ***not*** allow.

---

[5] In the context of this case – public school superintendents, principals and other administrators.

Throughout their briefing in this case, defendants suggest that it simply should have been "obvious" that having books that feature an LGVTQ+ character would be considered "controversial." This argument fails as well – and not just because it is directly contrary to settled law. Pending before this Court is a timely-filed motion to amend the complaint (ECF No. 17, Page ID Nos. 146-181). As is alleged in the proposed Amended Complaint, is has since been learned that the New Richmond district maintains books from the "Captain Underpants" series in the elementary school library (not simply in a teacher's personal classroom library) that feature a gay character who is in the fourth grade (ECF No. 17-1, *Proposed Amended Complaint*, ¶ 50, Page ID Nos. 159-160; ECF No. 17-2, Page ID No. 175). Although defendants have opposed the motion to amend (raising the same arguments they raise regarding the facial challenge to Board Policy 2240), defendants have neither disputed that these books are maintained in the elementary school's library nor that the "Captain Underpants" series features a gay character who is in the fourth grade.[6] What defendants do ***not*** even attempt to explain is ***why*** it should be so obvious to Ms. Cahall that maintaining books in her personal classroom library that feature gay characters would be prohibited when the District is maintaining other books in its school library that feature a gay character. Defendants' maintaining these books in the school library raises an inference that perhaps having books containing LGBTQ+ characters really is not "controversial" or that determining what is or is not "controversial" is completely subjective. It also raises the inference that perhaps defendants do not enforce Board Policy 2240 as rigorously as they might want this Court to believe.[7] While these are factual issues which need to be further developed through the

---

[6] Defendants in fact admit in their response to the pending motion to amend the complaint that the "Captain Underpants" series features a gay character (ECF No. 19, Page ID No. 196).

[7] Defendants contend repeatedly that "prior approval" is required for books like those at issue in this case to be in a library. If so, then it would be reasonable to infer that New Richmond has approved the inclusion of books from the "Captain Underpants" series to be included in the school's general library even though they contain a gay character. That is an issue for discovery. However, if the inclusion of books from the "Captain Underpants" series

discovery process, in the context of a motion to dismiss these are inferences to be afforded to Ms. Cahall at this state of the litigation.

The District's maintenance of the book "Boy Crazy Stacy" in the school library (ECF No. 17-1, *Proposed Amended Complaint*, ¶ 51, Page ID No. 160; ECF No. 17-3, Page ID No. 180) raises similar questions with respect to the interpretation and application of Board Policy 2240 and the "void for vagueness" doctrine. Defendants do not dispute that this book is in the school library; nor do they dispute that the book's title and cover art could be construed as "sexual" or "inappropriate" depending upon one's point of view. That too only serves to underscore the conclusion that determining what is or it not "controversial" under Board Policy 2240 is a completely subjective determination. It too underscores the lack of any meaningful standard for enforcement of Board Policy 2240 and only adds to the inference that defendants may not enforce Board Policy 2240 as consistently as they want this Court to believe – an inference that Ms. Cahall is entitled to at this stage of the litigation. The inclusion of these two specific books in the elementary school library and the inferences raised by that only serve to completely undermine the arguments made by defendants in support of the constitutionality of Board Policy 2240. Again – these are factual matters that need to be more fully developed through the discovery process but raise inferences that Ms. Cahall is entitled to at this stage of the litigation.

---

has been approved, it will be incumbent upon the defendants to explain why those books would not be considered "controversial" under Board Policy 2240 but the books maintained by Ms. Cahall are "controversial." If they have not been approved, then defendants will need to explain how they came to be in the library in the first place. Either way – their presence in the school library raises very serious questions about the level of enforcement of Board Policy 2240 and what the standards are being applied when it is enforced.

## **CONCLUSION**

For the reasons set forth herein and in the pending Cross-Motion for Judgment on the Pleadings (ECF No. 16), this Court should declare Board Policy 2240 to be unconstitutional on its face.

Respectfully Submitted,


s/ *Mark P. Herron*
Mark P. Herron (0051998)
5001 Mayfield Road, Suite 212
Lyndhurst, Ohio 44124
(216) 280-2828
Email: herronlaw@msn.com

Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

A copy of the foregoing was sent through the Court's ECF system this 15th day of April, 2025, to:

>Tabitha Justice, Esq.
>Subashi, Wildermuth & Justice
>The Greene Town Center, Suite 230
>Dayton, Ohio  45440
>
>Attorney for Defendants

s/ *Mark P. Herron*
Mark P. Herron (0051998)
5001 Mayfield Road, Suite 212
Lyndhurst, Ohio  44124
(216) 280-2828
Email:  herronlaw@msn.com

Attorney for Plaintiff
