IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| KAREN CAHALL ) | CASE NO. 1:24-CV-688 |
| ) | |
| Plaintiff, ) | JUDGE DOUGLAS R. COLE |
| ) | |
| v. ) | |
| ) | |
| NEW RICHMOND EXEMPTED ) | |
| VILLAGE SCHOOL DISTRICT ) | |
| BOARD OF EDUCATION, et al., ) | |
| ) | |
| Defendants ) | |

## REPLY BRIEF IN SUPPORT OF MOTION TO AMEND COMPLAINT (ECF No. 17)

As defendants necessarily concede, leave to amend a complaint under Civil Rule 15 is to be freely granted (ECF No. 19, Page ID No. 197). The parties agreed on a deadline of March 21, 2025, to amend the pleadings in this matter (ECF No. 10) which was incorporated into the scheduling order entered by the Court (ECF No. 13). It is not disputed that the pending motion has timely filed.

Defendants oppose the motion on the grounds that the amendment would be futile and would not cure what they perceive (incorrectly) to be faults with the original complaint that they contend entitle them to a dismissal of this case. In essence, defendants incorporate the arguments they have made in their pending motion for judgment on the pleadings (ECF No. 12) into their opposition to amendment of the complaint.

1

For the reasons set forth in plaintiff's opposition to the motion for judgment on the pleadings and in support of plaintiff's cross-motion on the facial challenge to Board Policy 2240 (ECF Nos. 16 and 20), it is plaintiff's contention that the pleadings in this case are more than sufficient to withstand defendants' motion. The proposed amended complaint adds further clarity to the legal and factual issues presented in this case.

A. **<u>Due Process Claims</u>**

With respect to the due process claims and whether Board Policy 2240 is constitutional either on its face or as applied to Ms. Cahall, it is submitted that the allowance of other books in the school library that feature a gay character raises very serious questions about whether books that feature a gay character truly fall within the ambit of a "controversial issue" under Board Policy 2240. Defendants concede that books from the "Captain Underpants" series feature a gay character that is in the fourth grade and that it is maintained in the school library (ECF No. 19, Page ID No. 196). They even acknowledge that the series is a "popular children's book series." The issue that is raised by their presence in the elementary school library is whether a reasonable person would believe that having children's books that feature gay characters in s personal classroom library would fall within the scope of Board Policy 2240 as it is being interpreted by defendants in this litigation. If maintaining a book in a classroom library that features a gay character is so controversial so as to justify the unpaid suspension of a teacher with a threat of dismissal for further violations of Board Policy 2240, then why is the maintenance of a book featuring a gay character allowed in the elementary school library? Defendants do not answer this fundamental question in their opposition to the proposed amended complaint. Likewise, defendants do not answer why maintaining the book "Boy Crazy Stacy" might not be considered controversial based upon the

2

title and the cover art (ECF No. 19, Page ID No. 180) which some could find to be inappropriate depending upon their viewpoint.

Rather than attempt to answer these questions, defendants pivot and allege that the amendment should not be allowed because "plaintiff does not allege any facts that suggest that these books were not reviewed by a book review committee prior to their placement in the library [or that] the school librarian or other staff member [sic] had knowledge of potentially controversial materials contained within the books" (ECF No. 19, Page ID No. 196). Defendants – for their part – do not proffer any evidence on this issue either although they certainly had the opportunity to do so in opposition to the motion.

That aside. since the filing of the motion defendants have responded to written discovery requests directed at this very issue which indicate that defendants do not actively enforce Board Policy 2240 – or at least do not do so on any consistent basis. At a minimum, these discovery responses raise a strong inference that neither the "Captain Underpants" books nor "Boy Crazy Stacy" went through any approval process. In their opposition, defendants reference an additional policy that is enumerated as Administrative Guideline 2520A (Exhibit 1) that is the procedure used by New Richmond to implement Board Policy 2240 (ECF No. 19, Page ID No. 199). Administrative Guideline 2520A includes a multi-page form (Form 2520F) to is to be completed for all non-district instructional materials.

In plaintiff's initial set of written discovery, defendants were directed to produce all Form 2520A forms for ***each*** book maintained in the Monroe Elementary School Library and by any Monroe Elementary School teacher in a personal classroom library. In amended discovery responses served on April 7, 2025, defendants confirmed under oath that ***no such forms existed*** (Exhibit 2, Answer to Requests for Production Nos. 9 and 10). Defendants also admitted under

oath that "the district does not maintain a list of books in individual classroom libraries" (Exhibit 2, Answer to Interrogatory No. 6). Assuming that the defendants have truthfully responded to these discovery requests, these sworn responses raise a reasonable inference that defendants have not complied with Board Policy 2240 or Administrative Guideline 2520 with respect to either the "Captain Underpants" books or "Boy Crazy Stacy." They raise a further inference that defendants either do not enforce Board Policy 2240 and Administrative Guideline 2520A at all, or only intermittently, with respect to teachers' personal classroom libraries. Ms. Cahall is entitled to these inferences at this stage of this litigation.

This is significant with respect to the substantive due process claims and application of the "void for vagueness" argument in this case. One of defendants' principal arguments in defense of this case is that it should have been "obvious" to Ms. Cahall that simply maintaining books that feature an LGBTQ+ character would be in violation of Board Policy 2240 simply because the book features an LGBTQ+ character. What defendants do ***not*** even attempt to explain is ***why*** it should be so "obvious" to Ms. Cahall that maintaining books in her personal classroom library that feature a gay character would be prohibited when the District is maintaining other books in its school library that feature a gay character. Defendants' maintaining these books in the school library raises an inference that perhaps having books containing LGBTQ+ characters really is not "controversial" or that determining what is or is not "controversial" is completely subjective. It also raises the inference that perhaps defendants do not enforce Board Policy 2240 or Administrative Guideline 2520 as rigorously or consistently as they might want this Court to believe. While these are factual issues which need to be further developed through the discovery process, in the context of a motion to dismiss these are inferences to be afforded to Ms. Cahall.

The District's maintenance of the book "Boy Crazy Stacy" in the school library raises similar questions. Defendants do not dispute that this book is in the school library; nor do they dispute that the book's title and cover art could be construed as "sexual" or "inappropriate" depending upon one's point of view. That too only serves to underscore the conclusion that determining what is or it not "controversial" under Board Policy 2240 and Administrative Guideline 2520A is a completely subjective determination. It too underscores the lack of any meaningful standard for enforcement of Board Policy 2240 and Administrative Guidance 2520 and only adds to the inference that defendants may not enforce Board Policy 2240 as consistently as they want this Court to believe – an inference that Ms. Cahall is entitled to at this stage of the litigation. The proposed amended complaint simply serves to further clarity to the due process and "void for vagueness" issues before this Court. Consistent with the requirement in Civil Rule 15 that leave to amend should be "freely granted," leave to amend should be granted in this case.

**B.** **Equal Protection and First Amendment Claims**

With respect to the plaintiff's Equal Protection and First Amendment claims, Ms. Cahall alleges in her complaint that she maintains sincerely-held religious beliefs that all children, ***including children who are LGBTQ+ of the children of LGBTQ+ parents***, deserve to be respected, accepted and loved for who they are. While defendants have at various times in this litigation questioned her the validity of her beliefs or tried to characterize her beliefs as secular and not religious, it remains that this allegation must be taken as true for purposes of the pending motion for judgment on the pleadings and that not the province of the courts or other governmental entities to question the veracity or validity of one's religious beliefs. Ms. Cahall further alleges that she informed defendant Miller of these beliefs at her pre-disciplinary hearing.[1]

---

[1] In the Motion for Judgment on the Pleadings, counsel for defendants flatly denied that Ms. Cahall informed defendant Miller of her religious beliefs at the pre-disciplinary hearing and accused the undersigned of

Ms. Cahall's core allegation under the Equal Protection Clause and the First Amendment is that she was treated differently because of her religious beliefs. One of the primary defenses advanced by the defendants in seeking dismissal of the complaint and in opposition to the proposed amended complaint is the alleged absence of "comparator" evidence in the complaint. The complaint, however, alleges instances (not denied by defendants) where other staff have used district resources, including their district-provided email accounts, to promote faith-based events such as the "Blessing of Monroe" prayer event and the "Samaritan's Purse" event which distributed Bible storybooks to children in over 170 countries in their native languages. The complaint also alleges that the District allows other staff to openly wear religious symbols at work – including Christian crosses.

The proposed amended complaint outlines additional evidence of the District allowing staff to engage in religious expression on District premises. A teacher is openly displaying a sign in a classroom stating "He is for you" (ECF No. 17-4, Page ID No. 181). Defendants concede that this sign has religious overtones (ECF No. 19, Page ID No. 200). Defendants argue that even though this sign does havehas religious overtones, it should not be considered because there is no contention that this specific sign violated any District policy or that anyone else ever complained about it (ECF No. 19, Page ID No. 199-200). Respectfully, whether or not anyone ever complained about this sign or whether it violated any District policy is not relevant under either the Equal Protection Clause or the First Amendment.

---

violating Rule 11 in so alleging (ECF No. 12, Page ID No. 54). However, in their responses to plaintiff's written discovery, defendants denied having any recordings, transcripts or other notes of that pre-disciplinary hearing (Exhibit 2, Answer to Request for Production No. 6). In the absence of any such definitive evidence, any claim by defendants that Ms. Cahall did not inform defendant Miller of her religious beliefs will ultimately be a factual and credibility issue to be resolved at a trial.

The crux of all of the decisions cited in the briefing pertaining to the Equal Protection Clause and the First Amendment is the requirement that the government maintain **_neutrality_** regarding divergent religious beliefs.  "Neutrality" means that if a governmental agency – such as a public school district – allows one employee to engage in religious expression (whether policy permits it or not) it must allow **_all_** employees to engage in similar religious expression even if others may disagree with the content of that religious expression or perhaps not even understand it.

:Neutrality" is at the core of the Supreme Court's holding in *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*, 584 U.S. 617 (2018), where the Court held that a state civil rights commission could not punish a baker for alleged discrimination who refused to bake a wedding cake for a gay couple because of his religious beliefs when that agency had a history of not punishing other bakers who had refused to create cakes that demeaned gay people or gay couples.  The Court made it very clear that "a principled rationale for the difference in treatment of these two instances cannot be based upon the government's own assessment of offensiveness *** and that the government's attempt to account for the difference in treatment elevates one view of what is offensive over another and itself sends a signal of official disapproval of [the baker's] religious beliefs."  584 U.S. at 638.

Ms. Cahall maintained the books at issue in this case on furtherance of her sincerely held religious values pertaining to LGBTQ+ children and the children of LGBTQ+ parents.  It can reasonably be inferred that the teacher who maintained the "He is for you" sign in her classroom also did so in furtherance of her sincerely held religious values.  It can likewise be reasonably inferred that the staffers who promoted events like the "Blessing of Monroe" and "Samaritan's Purce" did so in furtherance of their sincerely held religious values.  So too with those who choose

to wear religious symbols like Christian crosses. Just as in *Masterpiece Cakeshop*, it is not the place of a governmental entity like the New Richmond School District to determine the validity of Ms. Cahall's religious beliefs or to signal official disapproval of her beliefs by punishing her while simultaneously allowing other similarly situated staff to engage in expression of their religious beliefs on District property or using District resources. The amended complaint states a claim upon which relief can be granted and leave to amend should be allowed.[2]

                              Respectfully Submitted,

                              s/ *Mark P. Herron*
                              Mark P. Herron (0051998)
                              5001 Mayfield Road, Suite 212
                              Lyndhurst, Ohio 44124
                              (216) 280-2828
                              Email: herronlaw@msn.com

                              Attorney for Plaintiff

---

[2] If leave to amend is granted, plaintiff will correct the amended complaint to reflect that defendant Miller is the ***former*** Superintendent. Defendants, however, falsely identified Miller as the ***current*** superintendent in the verification page of their sworn discovery responses (Exhibit 2).

**CERTIFICATE OF SERVICE**

A copy of the foregoing was sent through the Court's ECF system this 16th day of April, 2025, to:

Tabitha Justice, Esq.
Subashi, Wildermuth & Justice
The Greene Town Center, Suite 230
Dayton, Ohio  45440

Attorney for Defendants

                                                s/ *Mark P. Herron*
                                                Mark P. Herron (0051998)
                                                5001 Mayfield Road, Suite 212
                                                Lyndhurst, Ohio  44124
                                                (216) 280-2828
                                                Email:  herronlaw@msn.com

                                                Attorney for Plaintiff